State v. Tate.

THE STATE v. TATE, *Appellant.*

Division Two, November 7, 1898.

1. **Assault:** INTENT TO ROB: FAILURE OF EVIDENCE. Defendant and one South were indicted for feloniously assaulting Meadows with intent to rob. Defendant obtained a severance. It is held, *first,* that the evidence does not show that the assault was committed by South for the purpose of robbery in pursuance of an agreement and understanding between him and defendant; and, *second,* that there was an entire failure of proof that defendant committed the crime of which he was convicted.

*Appeal from Newton Circuit Court.*—HON. JOHN C. LAMSON, Judge.

REVERSED AND REMANDED.

*George Hubbert, J. W. Brunk* and *Cravens & Cravens* for appellant.

(1) There is quite as much ground for argument that Tate was present, aiding and abetting in the assault on Meadows, as that he had advised and counseled it before. But that there is any substantial evidence of either fact however slight, we deny. *State v. Chambers,* 87 Mo. 406; *State v. Tice,* 90 Mo. 112; *Union Nat. Bank v. Barker,* 145 Mo. 356; *State v. Lackland,* 136 Mo. 26; *Glover v. Duhle,* 19 Mo. 360; 3 Jones on Evid., sec. 872; *Riney v. Vanlandingham,* 9 Mo. 816; 2 Whar. on Evid., sec. 570; 1 Griff. on Evid., sec. 469; 1 Thomp. on Tri., sec. 573; 10 Enc. Pl. & Pr., pp. 329, 230; Gillett, Indi. and Coll. Evi. [Ed. 1897], sec. 92; 3 Rice on Evid., secs. 332–333. There are wanting at least three of the essential elements, viz: *First,* South's intent to rob, of which he stands acquitted; *second,* Tate's guilty knowledge and intent, and *third,*

Tate's word or act of participation in the guilty act of South. *State v. Jones*, 106 Mo. 303; *State v. Scott*, 39 Mo. 424.

*Edward C. Crow*, Attorney-General, *Sam B. Jeffries*, Assistant Attorney-General, and *W. W. Graves*, for the State.

(1)  (*a*)  In answer to the point argued by the appellant, we say the facts and circumstances in evidence, together with the actions and admissions of the defendant, are amply sufficient, to not only support each instruction given by the court, but to support the verdict of the jury and the judgment of the court entered thereon. Underhill on Crim. Evid., pp. 8 and 9.  (*b*)  The facts shown as to the acts of the defendant in his attempt to prevent an indictment by the bribery of witnesses, and his solicitude as to whether they accused him or not, show a consciousness of guilt.  Underhill on Crim. Evid., sec. 115 *et seq.*  (2)  (*a*)  It is not necessary to prove the conversation between South and Tate, or the understanding between South and Tate, for the jury to find that they had conspired to assault and rob Meadows.  The jury can infer this from all the facts and circumstances, if they are sufficient, and in this case they certainly are, when taken in connection with the later acts and admissions of the defendant.  Underhill on Crim. Evid., sec. 491;  4 Am. and Eng. Ency. of Law [1 Ed.] 674.  (*b*)  The companionship and conduct before and after the offense are circumstances from which his participation in the criminal intention may be inferred. 2 Am. and Eng. Ency. of Law [2 Ed.] 33 *et seq.*

BURGESS, J.—At the May term, 1896 of the circuit court of Newton county, the defendant and one

William South were jointly indicted by the grand jury of said county, and charged in the first count in the indictment with feloniously, on purpose and of their malice aforethought, shooting with a pistol with intent to kill one William Meadows at said county on or about the twenty-sixth day of April, 1896, and in the second count with feloniously assaulting said Meadows with intent to rob.

At the May term, 1897, of said court on motion of defendant Tate, a severance was granted him. He then filed his application for a continuance which was overruled. Defendant was then put upon his trial before a jury, found guilty under the second count in the indictment, and his punishment fixed at two years imprisonment in the penitentiary. From the judgment and sentence he appealed.

The evidence tended to show that some time before the offense is alleged by the State to have been committed, the defendant Tate had talked with one Charles Palmer about robbing Meadows; that there were several of these conversations, the last of which was two or three months before the assault was made upon Meadows by South, which was on the night of the eighteenth day of April, 1896. It also appeared from the evidence that on the day last mentioned, Tate and South had both been to the city of Neosho attending a trial in which South was defendant; that they and some other parties, who were with them, relatives, came from Neosho to Granby in a wagon and a buggy; that Tate and South, and perhaps one Johnnie Williams and another, were in the wagon and a woman or two in the buggy; that they drove into Granby at about 5:30 o'clock in the afternoon; that instead of riding to their homes in the vehicles aforesaid, they remained in Granby and sent the vehicles home,

notwithstanding the fact that it had been raining and was still raining some.

The evidence then shows that about 7:30 o'clock William Meadows observed both Tate and South going along the road by his house, the Meadows house being about a mile from the town and about a quarter of a mile from the railway depot; that within about a half hour from the time these two parties were seen together near the house of William Meadows, Bill South walked up to the house of the prosecuting witness, William Meadows, pushed the door open and walked in, and told Meadows to throw up his hands. Meadows was sitting in a chair, and as he got up out of the chair, South shot him and then turned and ran away. South was recognized as the assailant both by Meadows and his wife. No one saw the defendant, Tate, present at the time. It was dark. Upon examination made by the neighbors the next morning, it was found from the tracks that two men had run across a little potato patch situated just east of the house, showing that some one was there with South at the time of the attempted assault. The evidence further shows that South lived on Tate's farm and that they were together a great deal; that immediately after this the defendant, Tate, was showing a good deal of anxiety about a report to the effect that he was accused of doing the shooting; it shows that defendant Tate had never been to the house of Mr. Meadows since he lived at the place where the shooting was done; that within a day or two after the shooting, Tate came in and had a talk with Mr. Meadows, and spoke to him about being accused of doing the shooting. The evidence discloses that the defendant immediately set to work to suppress testimony in order to prevent an indictment at the May term of the court; that he attempted to bribe witnesses to prevent an indictment being found against him; that within a day

or two after the trouble he had gone to Neosho and spoken to counsel about defending him in the cause. The testimony further shows that the two tracks across the potato patch were of different size, one being made by a number seven shoe, and the other by one about the size of a number nine; the evidence then shows that South wore a number seven shoe, and that Tate's shoe was larger, perhaps about a number nine.

It is not claimed by the State that the conviction of defendant can be maintained upon the ground of the commission by him in person of an assault upon Meadows with intent to rob him of his money or property, but that the assault was committed by South for that purpose in pursuance of an agreement and understanding between him and the defendant. But this contention finds no ground for support in the facts disclosed by the record. No such preconcerted plan was shown. Nor was Tate present at the time of the assault by South.

The evidence does not even show that South committed the assault with intent to rob. Not a word seems to have been said by him at the time as to what his purpose was. No demand for money or property was made by him and while it may be conjectured that his purpose was for robbery, the judgment can not be permitted to stand upon that theory. But even if the evidence showed that South made the assault with intent to rob, the evidence tending to show defendant's connection with it was purely circumstantial and entirely insufficient to justify the verdict. In fact, there was an entire failure of proof as to the offense of which defendant was convicted, and for that reason alone we reverse the judgment and remand the cause.

GANTT, P. J., and SHERWOOD, J., concur.