### P. Wingate v. State.

No. 2028.    Decided November 27, 1912.

Rehearing denied January 29, 1913.

**1.—Assault to Rob—Charge of Court—Alibi.**

Where, upon trial of assault with intent to rob, the State's evidence, sustained the conviction, there was no error, although defendant attempted to show an alibi which the court properly submitted to the jury.

**2.—Same—Motion for New Trial—Bill of Exceptions.**

Where the motion for new trial was based on many grounds, and appellant's bill of exceptions was to the court's action overruling said motion, the same cannot be considered on appeal.

**3.—Same—Evidence—Bill of Exceptions—Identification. .**

Where defendant's bill of exceptions did not point out the error as to the admission of testimony concerning the identification of defendant, the same cannot be considered on appeal; besides, such identification at the police station was an established fact.

**4.—Same—Evidence—Pistol.**

Upon trial of assault with intent to rob, there was no error in introducing testimony that the officer found a pistol near the scene of the attempted robbery; there being other testimony that defendant had a pistol at that time.

**5.—Same—Evidence—Confessions—Contradicting Witness.**

Where, upon trial of assault with intent to rob, defendant introduced as a witness one of his alleged companions who was shown to have been with him at the time, for the purpose of proving an alibi, there was no error in permitting the State to introduce the confessions of said witness, which completely proved the fact of the attempted robbery by the defendant; the court properly limiting such testimony to the purpose of impeachment.

**6.—Same—Charge of Court—Principals.**

Where, upon trial of assault with intent to rob, the evidence showed that other persons acted together with defendant in the alleged offense, the court correctly charged on the law of principals.

**7.—Same—Charge of Court—Specific Intent to Rob.**

Where the court's charge required an assault with intent to then and there by such assault and violence to rob the party injured, a complaint that the court's charge failed to instruct on specific intent to rob was untenable.

**8.—Same—Indictment.**

Where, upon trial of assault with intent to rob, the indictment followed approved precedent, the same was sufficient.

**9.—Same—Highest Penalty.**

Where, upon trial of assault with intent to rob, the jury fixed the highest penalty for this offense and the evidence supported the verdict, there was no error.

**10.—Same—Stating Facts—Practice on Appeal.**

Where the motion for rehearing pointed out errors in the statement of the facts in the original opinion which could not change the result, there was no error in overruling same on this ground.

**11.—Same—Confessions—Impeaching Witness—Charge of Court.**

Where the alleged confessions introduced in evidence were not those of defendant, but those made by a companion and were introduced to impeach the latter's testimony with reference to defendant's alibi, there was no error; the court properly limiting such testimony for the purposes of impeachment.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. Robt. G. Street, Acting Judge.

Appeal from a conviction of assault with intent to rob; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*O. S. York,* for appellant.—On question of identification: Walker v. State, 50 Texas Crim. Rep., 221; Trevenio v. State, 48, id., 207.

On question of introducing confessions of codefendants: Walton v. State, 41 Texas Crim. Rep., 454; Garza v. State, 38 Texas Crim. Rep., 317.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—Appellant was convicted of the offense of an assault with intent to rob J. Gothier on or about March 4, 1912, and his penalty fixed at ten years in the penitentiary.

Appellant's defense was alibi. This was correctly submitted by the court to the jury and found against him.

A brief statement of the facts only is necessary. About 11 o'clock at night on said date charged, an old gentleman by the name of Gothier was passing along one of the public streets in the City of Galveston about a block from one of the city street electric lights. Three negro men, apparently together, met him. One of them asked him for a match. He felt in his pocket, got the match and handed it to that one. Then another of the three asked him for a match and he likewise furnished him a match. The third at once, they all being right near him, drew a pistol,—a six-shooter,—presented it towards him and demanded that he holds up his hands. Instead of doing so, the old man struck the pistol in this negro's hands and knocked it out of his hands close to a brick wall, where a pistol was found the next morning. Immediately upon striking the pistol from the negro's hand, appellant ran from the scene as rapidly as he could hallooing "police, police." In about a half block from where the assault occurred he met a man and his wife to whom he then and there told what occurred and the manner of its occurrence. He was then greatly excited. There were two patrol policemen near this scene, but neither of them saw the actual occurrence. Immediately upon the old man striking the pistol from the negro's hand and running, the three negroes themselves ran away from the scene, appellant going in one direction and the other two in another. These policeman saw these parties running away from this scene and identified and swore positively to the identity of the appellant as one of them. The police at the time they saw appellant running away from the scene and the others too, did not know and up to that time had no information that this assault had been committed upon this old man, but very soon thereafter, having telephoned into headquarters as was their custom from time to time, were informed of it, it having been telephoned to police headquarters by the man with his wife, to whom Gothier ran and told of it immediately after it occurred. In the meantime, the two officers who saw the other two parties other than appellant suspected that something had occurred or else they would not have been running away as they were, undertook to arrest them. They did not submit to arrest and declined for the time being to be arrested by the police who attempted it. Other policemen came

to their relief from different directions and these other two parties, or one of them backed into those coming to the rescue and was arrested by them. In a few hours afterwards, appellant was also arrested at his rooming house, he then having gone to bed. They were all three taken to the city prison and kept until next morning. The old gentleman having been informed of it, went down, or was taken down for the purpose of ascertaining the identity of these parties and whether they were or not the parties who assaulted him the night before. Upon arriving there, he at once identified the three as the persons who had assaulted him and identified appellant as the one who had drawn and presented a pistol on him and demanded that he should hold up his hands. As stated above, the policemen also identified appellant as one of the persons who were seen running away from the locality where the assault had been committed just after it had been committed. The old gentleman, on the trial, and this policeman and others positively and unequivocally identified appellant,—the old man, as the party who assaulted him and drew a pistol on him and the others as the men seen running away from the locality of the assault just after it had been committed. The evidence is clearly and amply sufficient to sustain the verdict.

Numerous witnesses, for appellant testified that he was at his boarding house all the night of the robbery. They did not agree among themselves in all particulars as to where he was and what he was doing at the time from 8 o'clock at night till after the assault. However that may be, the jury, as they had the right, disbelieved his witnesses testifying to his alibi and believed the State's witnesses, who clearly identified him as one of the parties who committed the assault.

Appellant has only four bills of exception in the record. The first is to the court's overruling his motion for new trial. His motion for new trial is based on many grounds. We cannot consider that as a separate bill.

The second bill states that the State introduced the following testimony, to wit (Testimony of W. B. Wilkerson):

"Q. State whether or not at the time the old man identified these three men as the men who held him up? Judge York: I object to that. The court: Objection overruled. Judge York: Defendant excepts. A. Yes, sir. Q. Which one did he state, if he stated any, was the one that had the gun? Judge York: I object to that. The Court: Objection overruled. Judge York: I except. Q. Which one did he point out as the one with the gun? A. Wingate." The grounds of objection stated are that it was inadmissible for the State to attempt to have the complaining witness identify appellant at the police station while he was under arrest, forcing the defendant in that way and manner to testify against himself and the testimony was simply bolstering up the testimony of the complaining witness. It will thus be seen by this bill that it is so meager and does not comply with the

rules of the court universally acted upon as to authorize or require this court to consider it. It does not set out any of the proceedings in the court so as to enable this court to determine whether an error has been committed or not. It does not show who the witness was, when or where the circumstances were, or anything else that therefrom this court can tell any error was committed. Sec. 857, p. 557, and sec. 1123, p. 732, of White's Ann. C. C. P. Besides this, the court, in approving the bill, qualified it by stating that the record shows that "by other competent testimony introduced without objections, the fact of appellant's identification by the complaining witness at the police station was an established fact. It was uncontradicted." The bill, without the qualification, and especially with it, shows no reversible error.

The next bill, No. 3, is just as insufficient to require the court to pass upon it as the other. We get from it, however, that the appellant complained that the State could not prove by a police officer that he found in the street the next morning after this assault at night, a pistol just where this assault is alleged to have been committed. This evidence was competent and the court did not err in admitting it.

Appellant's other bill complains that the court erred in permitting the confession of one of the three persons who committed the said assault, showing completely the facts and in substance as testified to by other State's witnesses and the assaulted party. This bill is likewise defective as the others. The court, in qualifying it, shows that the confession was offered and admitted as impeaching evidence, the record showing, as referred to by the court that the appellant introduced Coleman as a witness who testified that he was one of the three who were indicted for this same attempted robbery and that not only he was not there, but that the appellant was not there on the occasion of the robbery and by his testimony proved an alibi for the appellant. On cross-examination the State produced and identified this witness' written confession at the time of his original arrest and asked him if he did not at that time make those statements which would have shown the falsity, or, in contradiction, of his testimony on this trial. The effect of his testimony is to admit the execution of his signature to this confession and that he made it, but he claimed that it was made under duress. One of the officers present testified fully showing that it was not made under duress, but was voluntary and after a full warning as it purported to be on its face. The confession was in the form as required by our statutes on the subject. It was offered by the State and admitted by the court at the time, solely for impeachment purposes, of the testimony of this witness. It was clearly admissible for that purpose even if the bill was sufficient to raise the point and require this court to pass thereon. Besides, the court in his charge, aptly and correctly told the jury that it could be considered by them only for the purpose of impeaching the testi-

mony of said witness and could not be considered by them as evidence
against the appellant or for any other purpose than for impeaching
said witness.

The evidence called for and the court correctly gave a charge on
the question of principals and correctly applied the law to the facts
of this case.

There is nothing in appellant's complaint in his motion for new
trial that the court did not charge that the jury must believe that
there was a specific intent on the part of the defendant to rob Gothier,
for the court did specifically charge that they must find from the
evidence beyond a reasonable doubt that appellant, in connection
with the said other two persons, did make said assault ''with the
intent then and there by such assault and by violence,'' etc., to rob
the said Gothier.

The indictment in this case follows precisely that laid down by
Judge Wilson in sec. 1062 of his Ann. Penal Code and has been ap-
proved by the decisions of this court some of which are cited in his
next section. Notwithstanding some of appellant's assigned errors
are not presented so as to require this court to consider them, we
have considered them all and find that none of them present reversi-
ble error.

It is true that the jury fixed the highest penalty for this offense.
The amount of the penalty under the law is left to the jury and not
to this court. There is nothing in the record and nothing shown by
appellant's contentions that indicate to this court that the jury in
affixing the penalty did not act properly and were not justified by
the facts.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

January 29, 1913.

PRENDERGAST, JUDGE.—Appellant, in his motion for rehearing,
calls our attention to some errors in the statement in the original
opinion summing up the facts. The motion for rehearing aids us in
correcting some of them which we cheerfully do. They are mostly
of collateral matters and we think do not affect the material questions
and decision of the case. For instance, in the orginal opinion in sum-
ming up, we incorrectly stated that *appellant* ran from the scene
as rapidly as he could hallooing ''police, police.'' Of course, *appel-
lant* did not do this. It was Gothier, the assaulted party, who did
this. The other facts stated would doubtless show that this was a mis-
take, but we correct it now. We also stated that when the appellant
presented the pistol Gothier struck it and knocked it out of his
hand. Perhaps this was stating it too strongly. Our attention is called
to the fact that he, on cross-examination, testified that he did not know

whether he knocked the pistol out of appellant's hand or not. Reviewing the testimony again we are inclined to believe he did not knock the pistol out of appellant's hand, but that the appellant or one of the assaulting parties, after getting about a block from where the assault was committed, threw the pistol away, at the place, and as otherwise stated in the original opinion.

It is always difficult and sometimes impossible for this court to get distances, courses and positions of persons and things from a statement of facts. From this record, after carefully considering it again. we agree with appellant's attorneys, we can not tell "whether running up 31st street is going north or south * * *" And "appellant can not say, and neither can appellant's attorney says, whether they were going north or going south." That is, when the three parties committing the assault were leaving the point where the assault was committed. The streets and localities, and whether there were any buildings on the streets or obstructions so as to prevent persons from seeing, are not disclosed by the record; neither are the distances given or disclosed. The testimony of the witnesses speaks of 30th street, H street, 31st street, Winnie street, Market street, Broadway, 33rd and so on. Doubtless the jury and the lower court were familiar with all of this and could readily understand the witnesses when they were testifying about what happened and what they saw, and whom they saw at certain streets and places on them. Taking the testimony as a whole, we think it is certain and clear that the assaulted party, Gothier, after he struck the pistol in the hands of appellant who presented it on him and demanded that he hold up his hands, ran something from between a half block to a block and a half hallooing "police"; that the appellant and his two companions, the three implicated in the assault on Gothier, also ran from the scene. None of them went in the direction that old man Gothier did and it seems that while they all may have started the same direction, they separated, two going on one side and appellant on the other side of one of the streets and that the policeman who saw them and identified them when they were running away, did so within about a block, more or less, of the place where the assault was committed. The officers testified they saw them running away and assumed that something unusual had occurred; they did not know then that old man Gothier had been held up or attempted to be held up by them, but saw and identified, as one of the persons who was running away from the locality where the assault had been committed, the appellant. There is no question about this. Whether they went one block or two blocks or within those distances, or went North, South, East or West, or up or down, or on what street, can not be material to the decision. Appellant claims (his defense was alibi) that he was not at or anywhere near the place of the assault and did not commit it, but that he was some distance from the place in bed asleep and had been so for hours continuously before this. That

the State's witnesses clearly and positively identified him as the party who tried to hold Gothier up, and he and others as near this scene running away from it, immediately after the assault was committed, there can be no question. So that while the court in summing up the testimony in the original opinion may have been in error in stating some of the facts, the material facts are clearly shown.

The only ground of complaint in his motion for rehearing is that the court was in error in holding that the confession of Coleman, one of appellant's witnesses, was admissible in evidence. We restate this question again briefly. Appellant's defense was alibi. Among other witnesses, in order to establish it, he introduced Coleman, who testified for him that at the time and for hours before the claimed assault on Gothier, appellant was in bed at a certain house some distance from where the assault was committed. This was important testimony in appellant's behalf by this witness. The State then was permitted to ask him if on the next day after the night of the assault, he did not make a written statement, or confession and in that state the facts and show that appellant was present and was one of the parties who committed the assault on Gothier at the time and place at which Gothier had testified it had occurred. Witness first denied making any such statement. When confronted with his written confession to that effect he would first deny that he made it and then would say that he did make it, but claimed that it was made under duress and by force by one of the officers. Then the State proved by one of the officers that the statement or confession was made by the witness and that it was voluntarily made and no duress or force whatever was used to obtain it. After this the statement was permitted to be introduced over appellant's objections, the court stating at the time, that he permitted its introduction for impeachment purposes of this witness solely, and correctly so charged the jury in his charge. We apprehend that appellant does not make the distinction between the impeaching of this witness by his previous written sworn statement contradicting his testimony on the trial from a confession of appellant. Of course, if it had been appellant's confession and he had either denied making it, or claimed that it was under duress, force, etc., then it would have been the duty of the court to have instructed the jury that if the confession was obtained by force and duress, not to consider it at all. But that was not necessary when a witness and not the appellant is attempted to be impeached. The court gave the only proper charge on the subject. Clearly the confession or statement was admissible to contradict Coleman's testimony given on this trial, which it directly did.

The motion is overruled.

*Overruled.*