THE STATE v. JOSEPH SIMON, Appellant.—295 S. W. 1076.

Division Two, June 3, 1927.

**1. ROBBERY: Intent: Proof.** To sustain a charge of an assault with intent to rob, it must appear that the assault was made with intent to rob; but the intent cannot be made to rest alone upon what the accused stated at the time of the assault, but may be drawn from all the facts and circumstances in evidence, including the words spoken by the accused.

**2. ———: ———: To Kill or Kidnap: Inference from Circumstances.** On January 15th the prosecuting witness, who had for a long time been the cashier of a shoe company, went to a bank and procured his company's pay roll of $1400. He placed the money in his inside coat pocket, and was wearing an overcoat, which was buttoned up. On his return, between two and three o'clock in the afternoon, and when he had reached the corner of the block in which the company's place of business was located, a man, positively identified as defendant, jumped out of an automobile parked at the curb. Its engine was running and another man sat behind the steering wheel. The defendant shoved a pistol against the cashier's body, and said: "Get into this car; get into this car." The cashier struggled with him, and the man in the car said, "Hit him." The cashier dodged, and the blow missed his head; he jerked loose from defendant, and thus escaped. Defendant then jumped into the waiting car, which was rapidly driven away. **Held,** that, while no words were spoken by defendant which may be said to characterize his acts as done with an intent to rob, rather than an intent to kill or kidnap, the jury were entitled to draw from all the facts and circumstances, including what defendant said, the inference that the

assault was committed with an intent to rob the cashier. [Disapproving as obiter what was said arguendo in State v. Tate, 145 Mo. 667.]

3. ——: ——: Circumstances: Common Knowledge. It is common knowledge that persons contemplating robbery stop with automobiles at the curb with the engines running and with a man at the steering wheel ready to facilitate the escape of their confederates who make the physical assault and actually rob the victim. It is also common knowledge that robbers frequently force their victims into automobiles, and speed away with them to some more distant and less conspicuous place where they can rob them at their leisure. And this common knowledge the jury are entitled to take into consideration in determining whether the intent of the defendant, who got out of an automobile parked at a curb, leaving a man at the steering wheel, and with a pistol in hand told a cashier who was carrying a pay-roll of $1400, to "get into this car," was to rob the cashier, rather than to kill or kidnap him.

4. ASSIGNMENTS: Improper Examination of Defendant. An assignment in the motion for a new trial that "the court erred in failing to exclude incompetent, irrelevant and immaterial testimony offered on behalf of the State" is too general to authorize a consideration of an assignment in the brief that the court erred in permitting "improper examination of appellant upon matters not touched upon in his examination in chief."

5. ——: Instructions: All Law of Case. An assignment that the court failed to instruct the jury upon all the law of the case is too general, both under Section 4079, Laws 1925, page 198, and under the law prior to the enactment of said new section.

6. INSTRUCTION: Collateral Matter: Former Conviction: No Request. An instruction to the effect that evidence pertaining to defendant's former conviction of crime can be considered only for the purpose of affecting his credibility as a witness, and not as evidence of guilt of the crime for which he is being tried, relates to a collateral matter, not necessary for the information of the jury in passing upon the issues raised by the information, and therefore the court is not required to instruct on the subject; and notwithstanding the defendant, when the instructions were read to the jury, objected and excepted to the court's failure to instruct them as to the purpose and effect of the proof pertaining to his former conviction, if he did not prepare and submit to the court an instruction advising the jury of the purpose and effect of such evidence, the failure of the court to frame and give such an instruction was not error.

7. ——: ——: Circumstantial Evidence. The court is not required to give an instruction on circumstantial evidence, since that is a collateral matter. Besides, even if an instruction on the subject is properly prepared and offered, the court is not required to give it where the evidence is not entirely circumstantial.

8. ALIBI: Question for Jury. The jury has the right to believe or disbelieve the evidence of alibi presented by numerous witnesses.

---

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 949, p. 512, n. 57; Section 2433, p. 1009, n. 6; Section 2542, p. 1082, n. 24; 17 C. J., Section 3333, p. 66, n. 15; Section 3350, p. 89, n. 65; Section 3351, p. 89, n. 70; p. 91, n. 76; Section 3597, p. 270, n. 19. Robbery, 34 Cyc., p. 1810, n. 89.

Appeal from Circuit Court of City of St. Louis.—*Hon. George E. Mix,* Judge.

317 Mo. Sup.—22.

AFFIRMED.

*Verne Lacy* and *J. A. Linders* for appellant.

(1)  The court should have sustained the demurrer offered at the close of the State's case and at the close of the whole case.  Brill's Encyclopedia of Criminal Law, 184, par. 94; State v. Patterson, 116 Mo. 505; State v. Tate, 47 S. W. 792.  (2)  It is the duty of the judge of a criminal court, as well as of all other courts of record, to instruct the jury on all the law arising in the case.  State v. Vinso, 171 Mo. 578; State v. Bond, 191 Mo. 555; State v. Hardy, 7 Mo. 303; 4 Blackstone's Commentaries, p. 361; State v. Burrell, 252 S. W. 709; State v. Conway, 241 Mo. 271.  (3)  The evidence in this case was insufficient to justify the submitting of the case to the jury.  The proven circumstances are insufficient without basing an inference on an inference, which is not permissible.  State v. Lackland, 136 Mo. 26; United States v. Ross, 92 U. S. 281; 16 C. J. 765; Vernon v. United States, 146 Fed. 121.  (4)  The court erred in permitting the defendant to be cross-examined upon matters not touched upon or growing out of his examination in chief.  Sec. 4036, R. S. 1919; State v. Pfeifer, 183 S. W. 337; State v. Goodwin, 271 Mo. 71, 191 S. W. 725; State v. Jones, 197 S. W. 156; State v. Sharp, 233 Mo. 286; State v. Webb, 254 Mo. 434.  (5)  When defendant offers himself as a witness, his previous conviction may be shown only to affect his credibility.  Manbach v. United States, 11 Fed. (2nd) 221; Mercer v. United States, 14 Fed. (2nd) 283.

*North T. Gentry*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

(1)  The State did prove an intention to rob, and therefore the court ought not to have sustained the demurrer to the evidence.  It was not necessary for the State to prove that defendant demanded money.  "Any conduct which, if followed by taking property, would have been robbery, will be evidence of an attempt to rob."  Under the circumstances of this case, it will be found that the intention of the defendant was to rob.  Kelley's Cr. Law & Procedure (3 Ed.) 514; People v. Kuhn, 125 N. E. 882; State v. Gulliver, 142 N. W. 951; Tyson v. United States, 122 Pac. 733; Wingate v. State, 152 S. W. 1078.  (2)  Evidence as to a former conviction is admissible.  Secs. 4036, 5439, R. S. 1919; State v. Hillebrand, 285 Mo. 299; State v. Howe, 287 Mo. 11; State v. Wilson, 242 S. W. 888.  Because of the foregoing statutes, it is not necessary to instruct the jury that evidence of a prior conviction of defendant must be considered only

for the purpose of affecting his credibility as a witness. The statute allows the proof of conviction of other crimes because it affects his credibility as a witness. (3) The state did not rely upon circumstances alone to convict the defendant. Therefore, an instruction on circumstantial evidence should not be given. State v. Nerzinger, 220 Mo. 47; State v. Hubbard, 223 Mo. 84.

BLAIR, J.—Appellant was convicted of assault with intent to rob, as defined by Section 3262, Revised Statutes 1919. The jury fixed his punishment at imprisonment in the penitentiary for a term of five years. He has appealed from the judgment entered upon the verdict.

As it is strenuously urged that the evidence was not sufficient to make a submissible case, a full statement of the rather meager testimony is justified. The scene of the alleged assault was the south-west corner of Thirteenth Street and Washington Avenue, in the city of St. Louis. The time was fixed between the hours of two and three o'clock, P. M., January 15, 1925.

The State's evidence tended to show that Grafton P. Clark, the prosecuting witness, was cashier of Rice-Hutchens Shoe Company, located near Thirteenth and Washington. He had been to the bank and procured the shoe company's pay roll of about $1400. He had the money in his inside coat pocket and was wearing an overcoat, which was buttoned up. As Clark reached the southwest corner of said streets, a man, whom Clark afterward positively identified as appellant, jumped out of an automobile parked at the curb. The engine of said automobile was running and an alleged confederate of appellant sat behind the steering wheel. Appellant shoved a pistol against Clark's body and said: "Get into this car, get into this car." Clark struggled with appellant. The man in the automobile said: "Hit him." Clark dodged and the blow missed his head. He jerked loose from appellant and thus escaped. Appellant then jumped into the waiting automobile and escaped.

There was evidence tending to show that the other occupant of the automobile was one James Michaels. He was charged jointly with appellant. For some undisclosed reason Michaels was not present at the trial, and the case was continued generally as to him and proceeded against appellant alone.

One Harbough corroborated Clark concerning the assault. He later identified Michaels as the man sitting at the wheel of the automobile and identified Michael's automobile as the one he saw at the scene of the assault. One Robbins saw Clark struggling with a man who had a revolver. He saw this man strike at Clark and then jump into the automobile, which was at once driven rapidly away. He did not undertake to identify the man who assaulted Clark. A

police officer, Virgil Rowland, arrested appellant and Michaels. He testified that Michaels owned and drove the automobile identified by Harbough as the one used at the scene of the assault.

Appellant testified in his own behalf and contented himself with a categorical denial of his presence at or participation in the alleged assault. He produced an aunt and other relatives and two men work-

**Intent to Rob.**

ing about his aunt's home who testified to his presence in a different part of the city at the time of the alleged assault upon Clark. If this alibi testimony was the truth, appellant could not have been present at and participated in the assault at the time fixed by Clark and other witnesses for the State. Appellant admitted that he had been previously convicted of the crime of larceny.

The contention that a case of assault with intent to rob was not made out by the evidence rests upon the proposition that "at no time in this record is there a scintilla of testimony attributing any language of [to] this defendant indicative of an intent to rob." It is contended that the jury was not authorized to draw the inference of an intent to rob from the evidence tending to prove that appellant jumped out of the automobile, seized Clark, shoved a pistol against his body and commanded him to "get into this car;" that the inference may just as logically be drawn from such proof that appellant assaulted Clark with intent to kill him or kidnap him; that the conclusion that appellant intended to rob Clark rests entirely upon speculation and supposition; that the proof, therefore, was insufficient to support a finding that appellant had the intention to rob Clark.

The record is entirely barren of proof of any words spoken by appellant which may be said to characterize his act as done with intent to rob, rather than to commit some other felony upon Clark. If the jury was entitled to draw the inference of an intention to rob, it must be that it was entitled to do so from all the facts and circumstances, including the proof of the words shown to have been spoken by appellant.

Appellant relies on State v. Tate, 145 Mo. 667, 47 S. W. 792, as a controlling decision by this court to the effect that the proof in the case at bar was insufficient. In that case, one South pushed open the door of the home of the prosecuting witness, Meadows, walked in and told Meadows to throw up his hands. As Meadows started to get up out of his chair, South shot him and ran away. Tate was charged jointly with South, took a severance and was convicted of assault with intent to rob. There was no proof whatever that Tate was about the premises when South shot Meadows and no sufficient proof of circumstances tending to show that he had any connection with South's act. In disposing of the case, BURGESS, J., said:

"It is not claimed by the State that the conviction of defendant can be maintained upon the ground of the commission by him in person of an assault upon Meadows with intent to rob him of his money or property, but that the assault was committed by South for that purpose in pursuance of an agreement and understanding between him and the defendant. But this contention finds no ground for support in the facts disclosed by the record. No such preconcerted plan was shown. Nor was Tate present at the time of the assault by South.

"The evidence does not even show that South committed the assault with intent to rob. Not a word seems to have been said by him at the time as to what his purpose was. No demand for money or property was made by him and while it may be conjectured that his purpose was for robbery, the judgment cannot be permitted to stand upon that theory. But even if the evidence showed that South made the assault with intent to rob, the evidence tending to show defendant's connection with it was purely circumstantial and entirely insufficient to justify the verdict. In fact, there was an entire failure of proof as to the offense of which defendant was convicted, and *for that reason alone* we reverse the judgment and remand the cause." (Italics ours.)

It is apparent that the controlling reason for reversing the judgment was lack of sufficient proof that Tate was connected in any way with the act of South, regardless of the crime of which South was guilty. Such was the "reason alone" upon which the judgment was reversed. What was there said concerning the insufficiency of the proof to show that the purpose of South was to rob Meadows was really unnecessary to the decision reached in view of the ruling that there was no proof of Tate's connection with the act of South, whatever it was.

It is interesting, but perhaps not important, to note in passing that, upon his second trial, Tate was again convicted and this court affirmed the judgment. [State v. Tate, 156 Mo. 119.] But the State went further upon the second trial and produced additional evidence, both as to the intent of South and as to Tate's connection with South's act, and for that reason the opinion written upon the second appeal is of no particular value in determining the case at bar.

The suggestion in the first Tate case (145 Mo. 667), that the evidence was not sufficient to make a case for the jury upon the question of South's intention to rob Meadows, seems to be out of harmony with well-considered cases from other jurisdictions. In Tyson v. United States (Okla.), 122 Pac. 733, the prosecuting witness was at work in his office with the safe open and blinds up when defendant rattled on the door and asked admittance. The prosecuting witness saw a gun in defendant's hands and slammed the door and caught

defendant in the door. When defendant released himself he rushed into the room and said: "I have got you where I want you, throw up your hands or I will blow your brains out." Several persons appeared at once and no robbery or other felony was committed. Defendant had observed prosecuting witness handling money and putting it in the safe the preceding day. In disposing of the contention that defendant's demurrer to the evidence should have been given, Judge DOYLE said:

"The defendant's counsel insist that the proof wholly fails to show what the intent of the defendant was in making the assault. The court overruling the demurrer said: 'The jury have the right to judge from all the surrounding circumstances the intent of the defendant.'

"What intent existed in the mind of the defendant at the time of the assault can only be determined by his acts, manner, and conduct at the time, together with the surrounding circumstances. His intent was therefore a question of fact for the jury. The demurrer to the evidence was very properly overruled by the trial court."

In Wingate v. State (Tex.), 152 S. W. 1078, the prosecuting witness Gothier met three negroes on an unlighted street, who requested matches. One of them drew a pistol and presented it toward Gothier and demanded that he hold up his hands. Gothier escaped and called the police. Wingate was the negro who presented the pistol and commanded Gothier to hold up his hands. He was convicted of assault with intent to rob. The judgment was affirmed upon the procedural errors assigned, without any consideration of the sufficiency of the evidence to sustain a finding of intent to rob. That apparently was regarded as too plain for argument.

In State v. Gulliver (Iowa), 142 N. W. 948, the man identified as defendant was in the rear office of the bank. While the cashier was gathering up the contents of the money drawer preparatory to placing the money in the safe, the man assaulted the cashier without saying a word. The cashier repelled the assault and the man identified as defendant fled without procuring any of the money. The court said: "That the assault was made with intent to rob the cashier or the bank is inferred only from the fact that it was made in the bank upon the person in charge thereof, and the further fact that no other known motive or explanation is suggested." The sufficiency of the evidence as to the intention of the assailant of the cashier to rob the bank apparently was taken for granted and the sufficiency of the evidence of the identity of the defendant on trial was the only question on the evidence which was considered by the court.

In People v. Kuhn (Ill.), 125 N. E. 882, Streit, the prosecuting witness, was a storekeeper. The door was opened and some one ordered, "Hands up!" He turned and saw two men with blackened

faces, one of whom was pointing a revolver at him. Streit put up such a vigorous resistance that the men, later identified as defendants, fled without procuring any money or even demanding money or otherwise verbally indicating the purpose of their assault. The defendants were convicted of assault with intent to rob upon this evidence, together with evidence tending to identify them as Streit's assailants. In affirming their conviction CARTWRIGHT, J., said: "The first count of the indictment was for assault with intent to rob, and it was argued that the evidence did not show such an intent because nothing of value was taken from the store or from Streit. The method employed and the order given were those usually employed and given in an assault with intent to rob, and the fact that there was no robbery was evidently due to the failure of Streit to obey the order. The fact that he defended himself and prevented the robbery has no tendency to disprove the alleged intent."

In Kelley's Criminal Law & Practice (3 Ed.) sec. 584, page 514, it is said: "It must appear that the assault was made upon the person intended to be robbed; but no actual demand of money or property need be proven. Any conduct which, if followed by taking property, would have been robbery, will be evidence of an attempt to rob." The author cites 2 Russell on Crimes (6 Ed.) 113, and 1 East on Pleas of the Crown, 418, both English writers. These authorities criticize early English cases which held that there could be no conviction for assault with intent to rob where there had been no demand for money or circumstances indicating such demand.

Appellant cites 1 Brill, Cyclopedia Criminal Law, sec. 94, page 184, where it is said: "Where a specific intent is an essential element of an offense, the existence of such an intent cannot be implied or inferred as a matter of law from the doing of the act, so as to throw the burden of negativing it upon the defendant, but it must be proved by the State as a matter of fact. The presumption that one intends the necessary or natural consequences of his voluntary acts is not conclusive in such cases, and may be rebutted. So where a specific intent to defraud is an essential element of an offense, it must be proved and cannot be inferred as a matter of law from the doing of the act, or the fact that it actually resulted in defrauding some one, even though that may appear to have been its natural consequence. The same rule applies in prosecutions for assault with intent to rob, or with intent to kill or murder, where the necessary intent cannot be presumed or implied as a matter of law from the acts done, but must be proved as a matter of fact, and its *existence determined as a fact by the jury from all the facts and circumstances in evidence.*" (Italics ours.)

The same authority said: "Intent need not necessarily be shown by direct or positive evidence, but it may be inferred from the cir-

cumstances. And this is equally true in cases where a specific intent is an essential element of the offense.'' [1 Brill, Cyclopedia Criminal Law, sec. 90.]

In State v. Wansong, 271 Mo. 50, which was a prosecution for assault with intent to kill with malice aforethought, this court said: ''The burden of defendant's contention and his chief complaint is that no presumption of intent is by law allowable, or is justly to be drawn from the use by defendant of a deadly weapon upon a vital part of the body of him who is assaulted. This court has repeatedly held against this contention of defendant. [State v. Schloss, 93 Mo. 361; State v. Hall, 85 Mo. 669; State v. Davis, 226 Mo. 493; State v. Silva, 130 Mo. 440; State v. Patterson, 116 Mo. 505; State v. Holme, 54 Mo. 153; State v. Underwood, 57 Mo. 40; State v. Ruck, 194 Mo. l. c. 431; State v. Foster, 61 Mo. 549; State v. Alexander, 66 Mo. 148; State v. Walker, 98 Mo. 95; State v. Doyle, 107 Mo. 36; State v. Fairlamb, 121 Mo. 137; State v. Grant, 144 Mo. 56; State v. John, 172 Mo. 220; State v. Webb, 266 Mo. 672; State v. Keener, 225 Mo. l. c. 496.]''

The weight of authority and indeed the dictates of common sense require us to hold in the case at bar that the intent in the mind of appellant at the time he made the assault upon Clark was a matter peculiarly within the province of the jury to determine from all the facts and circumstances in evidence, including the words spoken by appellant. The jury had the right to find from such evidence that appellant intended to rob Clark when he jumped out of his automobile and placed his pistol against Clark's body and commanded him to ''get into this car.''

There were no circumstances pointing to an intent to murder, kidnap or commit any other felony against Clark rather than the intent to rob him. Clark had worked for Rice-Hutchens Shoe Company for a long time. His habits with respect to securing the pay rolls of the company were doubtless capable of being ascertained by persons planning robbery. The assault occurred on January 15th, which was the middle of the month and doubtless was one of the regular times for payment of wages and salaries to the employees of the shoe company, although the record is silent on that point.

It is common knowledge in these day of fast-moving automobiles that persons contemplating robbery stop with automobiles at the curb with the engine running and with a man at the steering wheel ready to facilitate the escape of those who make the physical assault and actually rob the victim. It is also a matter of common knowledge that robbers frequently force their victims into automobiles and speed away with them to some more distant and less conspicuous place where they can rob them at their leisure.

In determining the intent of appellant, the jurors had the right to avail themselves of their own knowledge of the usual and ordinary happenings of life and to apply such knowledge to the particular facts and circumstances in evidence in the case at bar. It was for the jurors to say whether such facts and circumstances, measured by their own knowledge and experience of the affairs of life, pointed to the intent of appellant in assaulting Clark as that of robbing him.

The suggestion in the Tate case to the contrary must be regarded as *obiter* and not controlling, because the decision in that case was expressly put upon the ground that the evidence was not sufficient to show that Tate was connected with the assault upon Meadows by South. But even if such suggestion may be properly regarded as matter of decision in that case, it should not be followed here because such rule is out of harmony with what we regard as the great weight of authority. The contention that no case was made for the jury is therefore overruled.

Error is assigned because of alleged improper examination of appellant as a witness upon matters not touched upon in his examina-

**Assignments.** tion in chief. The only complaint in the motion for new trial as to the improper admission of testimony is found in the fifth paragraph, which is that "the court erred in failing to exclude incompetent, irrelevant and immaterial testimony offered in behalf of the State." This assignment is too general to comply with Section 4079, Laws 1925, page 198. [State v. Standifer, 289 S. W. 856.]

Another contention made in the motion for new trial and renewed in appellant's brief is that the trial court failed to instruct the jury upon all of the law of the case. Even prior to the 1925 Act, we held

**All Law of Case.** this assignment too general because it does not point out the particular subject upon which the court should have instructed and failed to instruct the jury. [State v. Burrell, 298 Mo. 672, l. c. 678; State v. Farrar, 285 S. W. 1000, l. c. 1004.] For a still stronger reason, the assignment is too general to comply with Section 4079, Laws 1925, page 198.

Appellant complains of error in the failure of the court to instruct the jury that it should only consider the fact that appellant had previously been convicted of crime for the purpose of affecting his

**Previous Conviction.** credibility as a witness and not as evidence of guilt of the crime charged against him in the case on trial. An examination of the record discloses that, when the instructions were read to the jury, appellant objected and excepted to the court's failure to instruct the jury as to the purpose and effect of the proof of his former conviction of crime.

The record does not disclose that appellant prepared and submitted to the court any instruction advising the jury of the purpose and

effect of the evidence in question. The subject upon which appellant requested the court to instruct was a collateral matter and not one necessary for the information of the jury in passing upon the issues raised upon the information under the proof made. It was not a subject upon which the court was required to instruct the jury, whether so requested by appellant or not.

In the case of State v. Starr, 244 Mo. 161, this subject was fully considered and the cases bearing upon it were discussed and distinguished. FERRISS, J., announced the unanimous opinion of the court as follows:

"The propositions established by the decisions are: That it is the duty of the court, whether requested or not, to instruct on essential questions, so as to properly advise the jury of the issues in the case; that, on collateral questions, it is not the duty of the court to instruct unless the defendant offers an instruction embodying the principle contended for, and if the instruction as offered is not correct in form, the court should frame and give one in proper form. . . . We now hold that as to collateral questions, the parties must formulate and ask such instructions as they may be entitled to, and such instructions should embody the principle for which they contend. If improperly framed, the trial court should correctly reframe them, if the principle embodied is applicable to the facts.

"Questions of law arising upon evidence impeaching witnesses are collateral questions. [State v. Kilgore, supra.] In the case at bar the defendant presented no instruction upon this point, but contented himself with a vague verbal request which did not indicate the nature of the instruction desired. At the same time he offered several written instructions on various other questions. We are of the opinion that, under these conditions, the court was not required to formulate an instruction upon the proposition."

In the Starr case the subject upon which the court refused to prepare and give an instruction was the same kind of an instruction appellant here requested the trial court to prepare and read to the jury. The exact offer in the Starr case was: "Defendant now requests the court to instruct the jury for what purpose they would consider the evidence as to defendant's reputation and former conviction." That in substance is the same record made in the case at bar.

We will not cite or discuss the cases considered by Judge FERRISS in the Starr case, because he performed that task exceedingly well. The Starr case has been cited with approval and followed in numerous subsequent cases, some of which are: State v. Weinberg, 245 Mo. 1. c. 574; State v. Thomas, 250 Mo. 1. c. 215; State v. Douglas, 258 Mo. 1. c. 291, and State v. Hobson (Mo. Sup.), 177 S. W. 376. We do not find that the rule laid down in the Starr case has since been

criticized, relaxed or modified to the slightest extent. It must now be regarded as the settled law of this State.

Although appellant in the case at bar objected and excepted to the failure or refusal of the court to instruct the jury upon the purpose and effect of the proof of his former conviction of crime, yet, as that subject was a collateral one and the instruction was not necessary for the information of the jury in giving its verdict, within the meaning of Section 4025, Revised Statutes 1919, it was the duty of appellant to formulate an instruction upon that subject and offer it to the court for its approval or rejection. Not having prepared such instruction, appellant is in no position to contend that error was committed because the trial court itself failed and refused to prepare and give such instruction. The assignment so contending must be overruled.

What we have said about the court's refusal to give an instruction on the purpose and effect of the proof of appellant's former conviction applies equally to the assignment of error in **Circumstantial Evidence.** the motion for new trial (but not renewed in the brief) that the court should have given an instruction on circumstantial evidence. That is a collateral matter. [State v. Hadlock (Mo. Sup.), 289 S. W. 945.] The instruction was not required to be given, even if properly prepared and offered, because the evidence in this case was not entirely circumstantial. We have thus ruled so frequently that citation of authority is no longer necessary.

The motion for new trial does not challenge the correctness of the instructions given by the court. Hence they are not before us for review.

We have considered all of the errors assigned by able counsel for appellant in his brief and also as sufficiently set forth in the motion for new trial below. An examination of the record shows that appellant was given a fair and impartial trial. The information is in due and often approved form. The verdict discloses that the jury found the appellant guilty as charged in the information. The judgment rendered upon the verdict was in appropriate form and was authorized by such verdict.

Finding no error in the record, we are not authorized to interfere with the verdict of guilty returned by the jury. The evidence of alibi was presented by numerous witnesses. The jury had the right to believe it or disbelieve it. Its finding that the alibi evidence was not true cannot be disturbed by this court. It becomes our duty to affirm the judgment and it is so ordered. All concur.