**STATE of Missouri, Respondent,**

**v.**

**Kenneth Hardin NORRIS, Appellant.**

**No. 49382.**

Supreme Court of Missouri,

Division No. 1.

Feb. 11, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied March 11, 1963.

[redacted]

Richard P. Nangle, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Scott O. Wright, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HYDE, Judge.

Defendant, charged under the habitual criminal statute (Sec. 556.280), was convicted of assault with intent to rob with malice aforethought (Sec. 559.180) and sentenced to 25 years' imprisonment. (Statutory references are to RSMo and V.A.M.S.) Defendant has appealed and makes the following two claims of error: (1) the court erred in failing to give instructions on lesser grades of the offense; and (2) the court erred in giving Instruction No. 1 authorizing the verdict found.

Considering first the latter, the State's evidence was that defendant and his companion Elmer Hammond hailed a taxi, driven by Lawrence Aubuchon, at Mississippi and Park in St. Louis. When Aubuchon picked them up, he was told to take them to Broadway and Market. At the south end of the Fourteenth Street Viaduct (over the railroad tracks) defendant grabbed Aubuchon about the back of his neck with his left hand and put a knife against his throat held in his right hand, saying "keep driving

you son of a bitch and don't give us no shit." Aubuchon said: "I grabbed his wrist, tried to pull it away a little bit. I said I won't cause you no trouble." Defendant told him to "shut up", emphasized by more vile language, and pulled the knife back toward his throat. At that moment, Aubuchon saw a police car (with which there were two officers) on the viaduct and started to drive over toward it. Defendant said "don't you dare" but Aubuchon drove over against the police car, stopped his cab, jumped out and told one of the officers that "a fellow in the cab had a knife on me." One of the officers went to each side of the cab and arrested the men in the back seat. A steak knife was found on the floor of the cab in front of the back seat. (The knife had a 4½ inch, very sharp, stainless steel blade.) On cross-examination the following occurred: "Q Did either of the men in that cab ask you for your money? [Objection made and overruled.] A They didn't ask for any money at that time. Q At any time did they ask you? A Hadn't got that far. * * * Q Mr. Aubuchon, just to clarify this, you stated there was no conversation before this alleged threat. So, in other words, there was no argument of any kind between you and the passengers of your cab? A No, sir. Not until he grabbed me."

Defendant's only witness was Hammond who said he and defendant had been drinking together and that he fell asleep in the cab right after he told the driver where they wanted to go and was not awakened until they came to the police car. He said he never saw defendant have the knife at any time while he was with him. Hammond said he and defendant were going downtown to do more drinking together and that they both had money, about $15.00 together.

Defendant claims the evidence does not show an intent to rob, arguing that no demand for money was made; that the incident took place on the viaduct which was well lighted after having passed over poorly lighted streets; and that the time the knife was held at the driver's throat was long

enough for a demand for money to have been made, if that had been his purpose. A somewhat similar situation was presented in State v. Simon, 317 Mo. 336, 295 S.W. 1076, in which a cashier of a shoe company (G. P. Clark) was on his way from the bank with the company's payroll, when the defendant therein jumped out of an automobile parked at the curb, with the engine running and an alleged confederate behind the steering wheel, and shoving a pistol against the cashier's body, said, "Get into this car; get into this car." As the cashier struggled with the defendant, the man in the car said: "Hit him"; but the cashier broke away from appellant and escaped. The defendant then jumped into the waiting car and was driven away. It was noted: "The record is entirely barren of proof of any words spoken by appellant which may be said to characterize his act as done with intent to rob rather than to commit some other felony." Nevertheless, holding the evidence sufficient to sustain a conviction of assault with intent to rob with malice, we said: "The weight of authority and indeed the dictates of common sense require us to hold in the case at bar that the intent in the mind of appellant at the time he made the assault upon Clark was a matter peculiarly within the province of the jury to determine from all the facts and circumstances in evidence, including the words spoken by appellant. The jury had the right to find from such evidence that appellant intended to rob Clark when he jumped out of his automobile and placed his pistol against Clark's body and commanded him to 'get into this car.' * * * In determining the intent of appellant, the jurors had the right to avail themselves of their own knowledge of the usual and ordinary happenings of life and to apply such knowledge to the particular facts and circumstances in evidence in the case at bar. It was for the jurors to say whether such facts and circumstances, measured by their own knowledge and experience of the affairs of life, pointed to the intent of appellant in assaulting Clark as that of robbing him."

In the Simon case (295 S.W. 1. c. 1076–1079) this court cited and quoted from Illinois, Iowa, Oklahoma and Texas cases holding that intent to rob could be inferred from all the surrounding circumstances although no words stating intent to rob were used; and stated that a suggestion to the contrary, in State v. Tate, 145 Mo. 667, 47 S.W. 792, "should not be followed here, because such rule is out of harmony with what we regard as the great weight of authority." Likewise, it is stated in 77 C.J.S. Robbery § 72, p. 528: "The essential intent may be established by any circumstances from which the jury may reasonably infer it, and such an inference may be proper despite accused's failure to say a word about wanting valuables; nor is it necessary to prove that the victim was searched or that there was any effort whatever to take from him any money or other thing of value. The victim's successful prevention of the robbery has no tendency to disprove the intent of accused to rob." See also 46 Am. Jur. 171, Robbery, Sec. 69; Annotation, Ann.Cas.1918A 416. Cases cited in these authorities emphasize as relevant circumstances such facts as the parties being strangers to each other, with no personal malice or grudge between them, and the occurrence taking place in the nighttime, as well as the kind of weapon used and the manner of its use

■ Obviously in this case, defendant wanted the driver to do something different from the previous instructions given him. It would certainly be reasonable for the jury to believe that defendant intended to force the driver to go somewhere else than Broadway and Market so he could accomplish whatever act he intended without detection. It is common knowledge that taxi drivers carry money collected from passengers, and to make change, and that taxi drivers have been robbed by persons purporting to be passengers. Defendant's conduct, directions to the driver and his effort to stop him from reaching the police, considered with the fact that the parties were strangers to each other and the way

the knife was used, all indicate such a purpose. Our conclusion is that the jury could reasonably find from the facts and circumstances in evidence that the intent of defendant in assaulting Aubuchon with the knife was to rob him and that there was no error in giving the instruction authorizing such a verdict.

■ As stated defendant was charged and convicted of violation of Sec. 559.180. Of course, as defendant says, it is the duty of the court to instruct on essential questions of law arising in the case [Sec. 546.-070(4), now Rule 26.02, V.A.M.R.] which means "instructions presenting the facts constitutive of the offense charged or any grade thereof shown by the testimony." See discussion of cases in State v. Chaney, Mo.Sup., 349 S.W.2d 238, 241. Defendant contends the jury should have been instructed on assault without malice aforethought defined by Sec. 559.190 and common assault under Sec. 559.220. None of the cases cited by defendant are robbery cases but consider the duty of the court to instruct on lesser degrees of other offenses. This same contention was made in State v. Washington, Mo.Sup., 357 S.W.2d 92, 95, a robbery case in which the defendant was charged with aiding another who actually used the weapon involved. (Brass knucks.) We said: "Before instructions on the included or lesser offenses are compelled, however, there must be evidentiary support for such offenses." Noting the defendant's claim that he did not participate in the robbery and had no intention of robbing the victim, we ruled: "According to him, he was not guilty of any offense. Had he admitted participation and a reason for the assault other than robbery or denied a felonious intent even though engaging in the combat, an instruction on the lesser or included offenses may have been required. 58 A.L.R.2d 1. c. 810. Thus, upon this record, the appellant was either guilty of the supported charge of assault with malice with intent to rob or he was not guilty of any offense." See also State v. Benjamin, Mo.

Sup., 309 S.W.2d 602, 606; State v. Burns, Mo.Sup., 328 S.W.2d 711; State v. Brown, Mo.Sup., 245 S.W.2d 866, 868.

■ In this case the State's evidence showed defendant committed the offense of assault with a deadly weapon with intent to rob under such circumstances as to indicate malice aforethought. (For the definition of these terms see State v. Ayers, Mo.Sup., 305 S.W.2d 484, 486, and cases cited.) Defendant was in the cab for several blocks with no words spoken, after directions to the driver as to destination, and after ample time for deliberation made an assault with the knife on reaching the viaduct. "The law presumes malice as a concomitant of an assault with a deadly weapon in the absence * * * of countervailing testimony or circumstances." State v. Ayers, supra, 305 S.W.2d 1. c. 486. Certainly defendant's claim was that he was not guilty of any assault or any offense, and, while he did not testify, he used his companion's evidence that he saw and heard nothing but slept undisturbed during the entire trip, as the basis of an inference that there was no assault. Defendant certainly did not claim or attempt to show that he engaged in an assault for any other purpose or without a deadly weapon. Our conclusion is that he was guilty of the offense charged or not guilty of any offense. For a case in which an instruction was given on assault with intent to rob without malice, see State v. Swiney, Mo.Sup., 296 S.W.2d 112, where defendant's evidence showed a fight first started by the person who claimed the defendant had attempted to rob him. Therefore, we hold the court did not err in failing to instruct on lesser degrees of assault.

We have examined the record as required by our Rules 28.02 and 28.08 and find it sufficient as to those matters therein specified.

The judgment is affirmed.

All of the Judges of the Division concur and STONE, Special Judge, concurs.