**William W. KENNEDY, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19202.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 11, 1965.

Decided Sept. 9, 1965.

Mr. William A. Dobrovir (appointed by this court), Washington, D. C., for appellant.

Mr. John R. Kramer, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and William C. Weitzel, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before DANAHER, BURGER and McGOW-AN, Circuit Judges.

BURGER, Circuit Judge:

This is an appeal from conviction for housebreaking, D.C.CODE § 22–1801, and robbery, D.C.CODE § 22–2901.

Appellant's principal contention is that alleged illegal police conduct at the time of his apprehension and arrest required that the testimony of the victims that he was the assailant be suppressed. He is obliged to raise his point under the claim of "plain error," having made no objection at trial.[1]

The record so far as relevant to the plain error contention shows the following: two police officers in a radio dispatched patrol car responded to a report of a possible robbery. The officers arrived at the complainants' home within minutes after the event and approached the dwelling from an alleyway at the rear. They found Appellant being forcibly restrained by two men who told the officers they had heard screams from the house and then saw two men run out, one of whom, the Appellant, was seized. The two women victims, whose screams had been heard, were found by police chained with handcuffs to a stair rail. Appellant on being taken into the house was promptly identified as the assailant who had handcuffed one woman to the stair rail. At trial both complainants positively identified Appellant in open court and testified as to their prior identifications at the scene of the robbery.

Appellant now urges that the complainants should not have been permitted to testify against him because (1) the identification derived from an arrest made without probable cause; (2) the identification of Appellant was "the fruit" of an illegal detention under the Mallory Rule[2] and (3) use of the testimony of the robbery victims infringed his Sixth Amendment right to counsel as defined in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), because he was without counsel when he was identified at the scene of the robbery.

■ (1) Appellant did not request a hearing in the District Court to develop the contentions he now urges. We will assume for present purposes, without so holding, that Appellant was under arrest when the officers "asked for everybody to come inside." Assuming Appellant was under arrest when he was directed to enter complainants' home, his contention that this arrest was without probable cause must be rejected as absurd on its face. The record shows that the radio report of a robbery, which brought the police to the scene, was confirmed by the officers' observation of one of the victims, who was still handcuffed. That information plus what the police learned from the two men who saw Appellant flee the house made it imperative that they bring Appellant under their control at that time: their action was reasonable and based on probable cause to believe Appellant had committed a crime.

■ (2) The *Mallory* contention is equally insubstantial. It appears from the record that the complaining witnesses made their identifications of Appellant immediately upon his coming into the house, *i. e.,* immediately after what we have assumed was his arrest. Appellant made no confession[3] and there is nothing

1. In this case, as in most, trial counsel does not represent Appellant in this court.

2. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

3. The "primary illegality" asserted here under *Mallory* is the exposure of Ap-

pellant to an identification by his victims. The same result could have been accomplished from police photographs, by a visit to the cellblock or at a police lineup, after a preliminary hearing all without Appellant's consent. The identifications cannot be considered fruit of

to suggest a police purpose to elicit a confession. Appellant's argument that the police acted improperly in failing to take him directly to a magistrate as soon as they knew there had in fact been a robbery by someone has a hollow ring. This contention illustrates the fallacy, so often indulged in, of equating probable cause with guilt. It is inescapable in a policeman's function that he is the first "judge" of probable cause and the very word "probable" presupposes the possibility of error in that evaluation. It is also his function to try to minimize the incidence of erroneous detentions and charges; taking Appellant into the presence of the complaining witnesses was entirely appropriate. Had the officers not done this Appellant would have been subjected to continued detention, a trip to the station, to booking and lineup processes, unnecessarily if the complainants had said he was not one of the attackers. The police should not have overlooked the possibility of his exoneration, which could be easily and swiftly resolved by "quick verification" in a confrontation.[4]

(3) Appellant's argument that Escobedo v. State of Illinois, *supra,* requires exclusion of the identification evidence is similarly groundless. See, *e. g.,* Cephus v. United States, 1965, 122 U.S. App.D.C. ——, 352 F.2d 663; Williams v. United States, 120 U.S.App.D.C. 244, 345 F.2d 733 (1965); Jackson v. United States, 119 U.S.App.D.C. 100, 337 F.2d 136 (1964) (concurring opinion).

The reliance on *Escobedo* as the "sovereign remedy" to cure the ailments of every accused may deserve some comment. Of course the police investigation had begun to "focus on a particular suspect"—the Appellant—when the victims identified him at the scene of the crime;

and no doubt this confrontation was a "critical stage" in the course of events, but that is not the whole story. These words from the *Escobedo* text are not to be construed out of the context of the Court's opinion; they must be read in light of the framework and the facts of the cases from which they are taken— and with a modicum of common sense. It was not the mere fact of "focus on a particular suspect * * in custody" but that focusing followed by an unwarned confession from a "process of interrogations" after "the suspect has requested and been denied an opportunity to consult with his lawyer"—who was at that moment trying to see and counsel him—which was found to violate Escobedo's Sixth Amendment guarantee of counsel. It is the combination of these elements, not simply the "focus" of investigation, which is the basis of *Escobedo,* 378 U.S. at 490–491, 84 S.Ct. 1758. Even if we assume the right to counsel to have attached, as Appellant contends, when the officers brought about Appellant's confrontation with the victims of the robbery, and independent of any request for counsel, it by no means follows that any constitutional right was impaired for he neither said nor did anything his counsel could have stopped had counsel been present. The sweeping claims urged on us that *Escobedo* has fixed the Sixth Amendment right to counsel as mechanically attaching

> when [the police] process shifts from the investigatory to the accusatory—when its focus is on the accused * * *.[5]

seem to assume this language was intended to be a firm rule of law precisely fixing the instant the constitutional right to counsel springs into play. We reject this interpretation first because it would

---

any *Mallory,* illegality. See Vaughn v. United States, 1965, 121 U.S.App.D.C. ——, 347 F.2d 793; Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, cert. denied 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961).

4. *Cf.* Proctor v. United States, 119 U.S. App.D.C. 193, 338 F.2d 533 (1964), cert.

denied, 380 U.S. 917, 85 S.Ct. 910, 13 L. Ed.2d 802 (1965); Payne v. United States, *supra* n. 3, 111 U.S.App.D.C. at 98, 294 F.2d at 727.

5. 378 U.S. at 492, 84 S.Ct. at 1766.

make no sense and second because it overlooks the limiting language which follows that quoted above "* * * and its purpose is to elicit a confession." Various situations come to mind in which the right to counsel could not conceivably be implemented at the time the police process focuses on particular persons; for example, a police car might be on hand as robbers flee from a bank or liquor store, bags loaded with loot and guns blazing as they enter the getaway car. As soon as police commence pursuit an "investigation" is surely in process and just as surely it "has begun to focus on a particular suspect," 378 U.S. at 490, 84 S.Ct. at 1765, but what person would be so naive as to say police may not act absent counsel for the culprits?[6] Police may pursue and if need be, they may shoot, as indeed is often the case with suspects in flight. And if the pursuit ends in capture any threshold identification like threshold utterances would seem admissible by analogy to United States. v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944) and Metoyer v. United States, 102 U.S.App.D.C. 62, 250 F.2d 30 (1957).

What the Court said in *Escobedo* about the "focus" concept must be considered in its entirety and in context and not as some have been doing by carefully calculated omission. What the Court said was this:

> Nothing we have said today affects the powers of the police to investigate "an unsolved crime," Spano v. [People of State of] New York, 360 U.S. 315, 327 [79 S.Ct. 1202, 3 L.Ed.2d 1265] (STEWART, J., concurring), by gathering information from witnesses and by other "proper investigative efforts." Haynes v. [State of] Washington, 373 U.S. 503, 519 [83 S.Ct. 1336, 10 L.Ed.2d 513]. We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused *and its purpose is to elicit a confession*—our adversary system begins to operate, *and, under the circumstances here,* the accused must be permitted to consult with his lawyer. [378 U.S. at 492, 84 S.Ct. at 1766 (Emphasis added.)]

We suggest that this illustrates the fallacy of resting on the word "focus" to the exclusion of 14 pages of *Escobedo* which the Supreme Court devoted to explaining what it meant.[7]

While the Supreme Court dwelt at some length on the arbitrariness and unreasonableness of the police conduct and the pointed frustration of Escobedo's desire to see his waiting lawyer, the holding is essentially another manifestation of judicial distrust of confessions made while in police custody. Escobedo's Sixth Amendment right to counsel became important in its impact on his Fifth Amendment right to silence; the Court assumed that had his counsel been admitted on arrival at the police station Escobedo would have been advised to remain silent and no confession would have followed.

---

6. Even assuming the presence of a peripatetic public defender in or following the police car, such counsel cannot impede the "dynamic" form of investigation inherent in hot pursuit, apprehension and confrontation with victims.

7. It should be remembered that when the Supreme Court articulates reasons for finding that a constitutional provision is applicable or inapplicable to the facts of the case before it, it is not writing part of a criminal code, with each paragraph to be treated as a chapter and each sentence a new section. Rather, it is discoursing upon the Constitution or, as it was put by Chief Justice Marshall in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819), "expounding" one. The techniques of statutory construction are ill-suited to expounding a constitution; still less are they suited to construing the words and phrases of a judicial opinion, whether that opinion expounds a constitution, construes a statute, or announces a common law rule. Judicial opinions cannot often be dissected microscopically, with their words or phrases applied without regard to one another or to the facts before the court; judges are not likely to write with that end in view.

Thus it was the police "quest for a confession" while holding at bay the lawyer who would have asserted Escobedo's Fifth Amendment rights for him, and the interaction of the two Amendments, not either one in isolation, which was the foundation of the holding.[8]

These are the very factors which render *Escobedo* inapposite here for, unlike the absolute right to stand mute, the Constitution confers no right on an accused to be immune from the eyes of his accusers. The privilege is against testimonial compulsion whereas exposure to view, like fingerprinting and photographing, is not proscribed. See, *e. g.*, Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910) (Holmes, J.); Smith v. United States, 88 U.S. App.D.C. 80, 187 F.2d 192 (1950), cert. denied, 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358 (1951); McFarland v. United States, 80 U.S.App.D.C. 196, 150 F.2d 593 (1945), cert. denied, 326 U.S. 788, 66 S.Ct. 472, 90 L.Ed. 478 (1946). The absence of counsel at the time of the confrontation at the scene of the crime did not deprive Appellant of a right to silence, a right to withhold evidence or any other right which could have been effectively asserted had counsel been present.

An accused has no right to be viewed in a lineup rather than singly.

To be sure, a lawyer on the scene might have *asked* the police to assemble a lineup before arranging a confrontation. But the chances that the officers would have acquiesced in such a course—which would have impeded a further speedy search of the neighborhood had the victims exonerated the Appellant—are speculative at best. At that stage police, not suspects, must be in control. Moreover, we cannot assume that the two complainants would not have picked Appellant out of a lineup in view of the positiveness of their identifications. Since the facts here thus do not squarely present the issue, we do not consider whether an *Escobedo* claim may ever validly rest on use of evidence derived from absence of advice of counsel concerning *requests* an accused might have made of police rather than *rights* he could have insisted on.

The contentions made in the instant case spring, we can assume, from the circumstance that, under the prevailing system of providing indigents with counsel, a new lawyer was appointed for Appellant here, as in most cases, on his appeal. The new lawyer in such cases is on the horns of a dilemma. Even when his sound professional judgment tells him there is no valid point on appeal, he is reluctant to urge this on his indigent client as he would be professionally bound

8. *Escobedo* seems to assume without discussion that the privilege against self-incrimination obtains during police interrogation contrary to centuries of common law acceptance of the theory that there existed no legal obligation to which the privilege could attach, since police have no legal right to compel an accused to answer. See 8 WIGMORE, EVIDENCE § 2252 & n. 27 (McNaughton rev. ed. 1961). Our holdings have intimated that the privilege applies only to proceedings in which testimony can be judicially compelled. See, *e. g.*, Wood v. United States, 75 U.S.App.D.C. 274, 277, 128 F.2d 265, 268, 141 A.L.R. 1318 (1942). But the Supreme Court has recently (in Malloy v. Hogan, 378 U.S. 1, 7, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)) reaffirmed and extended to the States its then anomalous application of the privilege to extrajudicial confessions in Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Brown v. State of Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936), and 8 WIGMORE, *supra*, § 2266, to the contrary notwithstanding, the common law and due process rule excluding coerced confessions (which has always applied to police interrogation) and the self-incrimination privilege now seem blended into a monolithic concept. See 378 U.S. at 7, 84 S.Ct. 1489. Neither principle, however, is broad enough, no matter how one might strain the processes of rational thought, to embrace the extrajudicial identification evidence and the courtroom identifications challenged by Appellant.

to do with a paying client or client's family in order to spare them the expense of a fruitless appeal. Representing an indigent, however, the lawyer must bear in mind the frequency of post conviction attacks in which the convicted person from the privileged sanctuary of the "jail house" (and with the advice of "jail house lawyers" whose ethical practices are beyond the reach of disciplinary steps applicable to lawyers) launches attacks on his trial attorney. Thus the appointed lawyer on appeal seems to consider that he must protect himself by advancing to us some kind of legal contention, whatever the merit or lack of it. No other explanation suggests itself for the rash of sweeping claims under the *Escobedo* holding, witnessed in the past year, for the Supreme Court's language does not warrant such claims.

Assuming, *arguendo,* that Appellant's Sixth Amendment right to counsel attached when the officers asked him to enter the house where the robbery occurred, Appellant has not been deprived of the effective assistance of counsel, as *Escobedo* articulates that right, because neither this record nor the arguments advanced to us suggest with any plausibility that counsel could have altered the course of events. Absence of counsel at the scene of the crime did not result in use against Appellant of a confession elicited without warning of his right to silence nor did it produce any other evidence respecting which counsel could have rightfully advised Appellant to refuse to yield. We are aware of the decisions of the Third Circuit in United States ex rel. Russo v. New Jersey, 1965, 351 F.2d 429, and of the Second Circuit in United States ex rel. Stovall v. Denno, *supra,* which counsel has vigorously urged on us. We do not read them as embracing the present facts, but even if these cases could be said to be in point, then we would vigorously disagree with them.

Affirmed.

McGOWAN, Circuit Judge, concurs in the result.