UNITED STATES of America,
Appellee,

v.

Joseph QUARLES, Appellant.

UNITED STATES of America,
Appellee,

v.

Calvin Percy MARTIN, Appellant.

Nos. 11133, 11134.

United States Court of Appeals
Fourth Circuit.

Argued June 20, 1967.

Decided Nov. 30, 1967.

Edward A. Tomlinson, Baltimore, Md. (Court-appointed counsel), for appellant Joseph Quarles.

James W. McElhaney, Baltimore, Md. (Court-appointed counsel), for appellant Calvin Percy Martin.

Paul M. Rosenberg, Asst. U. S. Atty. (Thomas J. Kenney, U. S. Atty., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Convicted of bank robbery, interstate transportation of a stolen car, and related offenses [1] and sentenced to twenty years' imprisonment, defendants Quarles and Martin appeal, assigning numerous errors.

## I.

## SUFFICIENCY OF THE EVIDENCE

On February 17, 1966, a robbery occurred at the Central National Bank, Riggs Plaza Branch, in Hyattsville, Maryland. At approximately ten o'clock that morning a car drove up in front of the bank "real fast." Two men jumped out and rushed into the bank; both wore hooded sweat shirts tied so as to cover their faces except for their noses, eyes and a portion of their foreheads and both wore sunglasses. One man, carrying a small gun and a brown paper shopping bag, went directly to the teller's window of Mrs. Ayres, said, "This is a stickup," and directed Mrs. Ayres to put the money in the shopping bag. The other man stopped at the desk of Mr. Smith, just inside the front door, pointed a gun at him and told him to lie down, then went to Mrs. Evans' window and presented her with another brown paper shopping bag. After a lapse of no more than three minutes, the robbers ran from the bank and drove away in a red and white Pontiac. Mrs. Ayres ran to the front window in time to see the license number and wrote it down. A short time later a car with the same license number was found about four blocks from the bank in the District of Columbia not far from the residence of Martin. The car was the property of Mr. Floyd Corbin who had parked it that morning at his place of work in Maryland. At trial Mrs. Evans identified three pictures of this car as being the get-away vehicle; Mr. Smith was

1. The indictments are laid under 18 U.S.C. §§ 2113(a), (b), (d), 2312.

able to identify only the one photograph that showed the license plate; Mrs. Ayres, perhaps because of her concentration on getting the license number, did not recognize the photographs as being pictures of the robbers' car and asserted positively that they were not; Mrs. Vettori, another of the bank employees present during the robbery, was unable to identify any of the pictures.

An Astra Cub pistol was found lying on the front seat of the vehicle. This gun belonged to Mr. John Allen who was Martin's supervisor at the Time Oil Fuel Company, a filling station in Glen Arden, Maryland. Mr. Allen testified that he kept the gun in a drawer in his office. At about 4:00 P.M. on the day of the robbery, Mr. Allen heard a radio report of the bank robbery, looked in the drawer and discovered that the gun was missing; he reported the loss to no one. He testified that he had last seen the gun in the drawer the day before the robbery.

On the afternoon of the robbery Quarles, Martin and two other persons went to a used car lot in Baltimore, Maryland. There Martin arranged to buy a 1965 Oldsmobile for $2,895.00 making a cash down payment of $360.00 consisting of 17 twenty-dollar bills, one ten-dollar bill, and two five-dollar bills. Martin did not have enough money for temporary license plates and borrowed $10.00 from one of the others. Martin and Quarles went into the bathroom; when they returned, a salesman saw Quarles putting money back in his pocket. Mr. Wilbanks, owner of the used car lot, gave all of the money he received from Martin, plus two other twenty-dollar bills, to Agent Hines of the F.B.I.[2] One of these twenty-dollar bills had the number "500" written on it. Mrs. Evans testified that the "500" looked like her handwriting and that a day or so before the robbery she had written "500" on a twenty-dollar bill, but she could not say that this was the bill or

that such a bill was taken during the robbery.

Shortly after 10:00 A.M. on the day of the robbery Lawrence Berry, Jr., a thirteen-year-old eighth grader, looked out of a window in his house and saw the Pontiac stop in the place where it was later found by the police. From a distance of twenty-five feet he observed a man jump out of the car. He had on boots, khaki pants, a hooded sweat shirt, black jacket and sunglasses and carried two "brownish colored" bags. At preliminary hearing and again at trial, Berry identified this man as Quarles. Although Berry seemed to be in some confusion as to whether Quarles wore a moustache or a goatee and none of the bank employees remembered his wearing either, an F.B.I. picture of Quarles taken on February 23, 1966, indicated that Quarles had a moustache at that time.

Six days after the robbery F.B.I. Agents Mulholland and O'Neill went to Berwyn Fuel and Feed Company where Quarles was employed. The two agents and Quarles left there on an unsuccessful search for witness Berry a little after 8:00 A.M. At about 10:00 A.M. they came to the bank. Quarles and O'Neill stood outside the bank in front of a glass window while Agent Mulholland went inside and asked Mr. Smith, Mrs. Vettori, Mrs. Ayres, and Mrs. Evans to observe Quarles. Both Mrs. Evans and Mrs. Ayres asked Mulholland to have Quarles come in the bank; Quarles did so and was identified as one of the robbers. Then Quarles was formally placed under arrest and searched. A set of keys, some of which opened the door and started the motor of Mr. Corbin's Pontiac, was found on his person.

Three days later on February 26, 1966, Agents Mulholland and O'Neill took two of the bank employees, Mrs. Ayres and Mrs. Evans, to the Time Oil Fuel Company where Martin was working. Three Negro males were congregated together three to five feet from the car. The

2. Apparently, Mr. Wilbanks had $40.00, two twenty-dollar bills, in his possession when he dealt with Martin. Thus, Mar- tin gave Wilbanks 17 twenties and Wilbanks gave Agent Hines 19.

two women identified Martin as one of the bank robbers at this time and again at trial. The testimony disclosed that the F.B.I. agents did not point out Martin to the witnesses, and the witnesses did not speak with each other while making their identifications.

At trial Mrs. Evans based her identification of the defendants on size, complexion and walk. Mrs. Ayres, when asked for the basis of her identification, said, "Upon seeing them again after the robbery, their mannerisms, their size, their shape, their voice, the way they walked." Mr. Smith, able to identify only Quarles, based his identification on "the general characteristics of the individual, that being height, weight, general coloration of the skin." Mrs. Vettori was unable to identify either of the defendants. None of the witnesses testified on direct examination to the pre-trial identifications, but were cross-examined about them by counsel for defendants. See generally, United States v. Wade, 388 U.S. 218, 247, 87 S.Ct. 1926, 1942, 18 L.Ed.2d 1149, 1169 (1967) (dissenting opinion).

The record also showed that neither appellant was at his place of employment on the day of the robbery and that Martin had obtained an advance of $20.00 on his wages the day before the robbery.

■■ There is no doubt that a robbery took place on February 17, 1966; the only real question at trial was the identity of the robbers. Both appellants assert that the evidence is insufficient to support a verdict which implicitly identified them as the bank robbers. We cannot agree. The accepted test is "whether there is substantial evidence which, taken in the light most favorable to the United States, tends to show that the defendant is guilty beyond a reasonable doubt." Bell v. United States, 185 F.2d 302, 310 (4th Cir. 1950).

■ Here we have not only so-called "positive identification," but strong corroborating circumstances which, al-though not susceptible to quantitative measurement, nevertheless indicate guilt. Quarles possessed the keys to the escape vehicle. The gun used in the robbery was found in that vehicle and belonged to Martin's employer. Martin had the opportunity to get it. Quarles was seen departing from the vehicle with two bags similar to those used in the robbery. The car was found close to where Martin lived. Quarles and Martin spent a good portion of the day in the company of each other. A bill, probably taken from the bank, was spent by Martin the afternoon of the robbery. Martin on the afternoon of the robbery had $360.00 although he had borrowed $20.00 on the day before. No one of these facts standing alone would be sufficient from which to infer guilt, but together they are highly incriminating if not conclusive. It is hard to see how there could be a reasonable doubt but it matters not, for the "possibility that a jury may have a reasonable doubt upon the evidence as to the guilt of the defendant is not the criterion which determines the action of the trial judge." Bell v. United States, supra at 310.

## II.

### PRE-TRIAL IDENTIFICATIONS

■ The most serious problem relates to pre-trial identifications. Quarles asserts a violation of his right to counsel under the Sixth Amendment and a violation of Fed.R.Crim.P. 5(a). Martin asks that we exercise our supervisory powers under the *McNabb* doctrine to exclude evidence which is the product of unfair police methods. None of these points was raised below but, even though we do not find plain error within the meaning of Fed.R.Crim.P. 52(b), an exposition of our reasons for failing to so find is not inappropriate.[3]

■ In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and in Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951,

---

3. Ordinarily a failure to object in the district court to a claimed violation of Rule 5(a) is decisive. United States v. Del Llano, 354 F.2d 844, 848 (2d Cir. 1965).

18 L.Ed.2d 1178 (1967), the Supreme Court for the first time held that the Sixth Amendment includes the right to counsel at a lineup, but in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Court held that these decisions were not to be applied retroactively. Thus, it is clear that whatever implications the *Gilbert* and *Wade* cases may have in the future for such procedures as were used here, Sixth Amendment arguments are foreclosed in this case.

Quarles also asks us to conclude that, at the time he was identified by the bank employees, he had been under arrest for some two hours, that this was a violation of Fed.R.Crim.P. 5(a) [4] in that he had not been taken before a commissioner, that the courtroom identification was the product [5] of this illegal detention and should, thus, have been excluded. Alternatively, Quarles asks that we remand the case to the district court for an evidentiary hearing to determine precisely when arrest occurred.[6] We think it unnecessary to have the question resolved.[7]

■■ Even on the assumption that Quarles was under arrest at 8:00 A.M., and he contended to the contrary in the court below, we think a two-hour delay for identification is not, on the facts of this case, "unnecessary" within the meaning of Rule 5(a). Reasonable flexibility is inherent in the rule and in the key word itself. Evalt v. United States, 359 F.2d 534 (9th Cir. 1966); United States v. Curry, 358 F.2d 904 (2d Cir. 1966); Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966); United States v. Swartz, 357 F.2d 322 (4th Cir. 1966); United States v. Collins, 349 F.2d 296 (6th Cir. 1965); Copeland v. United States, 120 U.S.App.D.C. 5, 343 F.2d 287 (1964); Caldwell v. United States, 338 F.2d 385 (8th Cir. 1964); Ralph v. Pepersack, 335 F.2d 128 (4th Cir. 1964); Mohler v. United States, 312 F.2d 228 (7th Cir. 1963); United States v. Vita, 294 F.2d 524 (2d Cir. 1961).

■ We decline Martin's invitation that we exercise our supervisory power to fashion a *McNabb* type "fruittree" rule to exclude identification evidence which he asserts was unfairly obtained. The Supreme Court has pointed out that this power is one that must be sparingly exercised, for the "function of a criminal trial is to seek out and determine the truth or falsity of the charges brought against the defendant.

4. "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith." Fed.R.Crim.P. 5(a).

5. Query: whether the scope of Rule 5(a) extends to barring *identification* testimony or is limited to excluding *communications* from a defendant obtained during a period of "unnecessary delay?" See, United States v. D'Argento, 373 F.2d 307 (7th Cir. 1967); Lovelace v. United States, 357 F.2d 306, 310 (5th Cir. 1966); Kennedy v. United States, 122 U.S.App.D.C. 291, 353 F.2d 462 (D.C.Cir.1965); Williams v. United States, 120 U.S.App.D.C. 244, 345 F.2d 733, 736 (1965) (concurring opinion);

Caldwell v. United States, 338 F.2d 385 (8th Cir. 1964); 4 Barron & Holtzoff Federal Practice and Procedure § 1871 at 28 (Supp.1964). But cf. Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666, 673 (1963); Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958).

6. At the trial it was Quarles' position that arrest did *not* occur until after identification in front of the bank. The theory that he was arrested at time of first contact by F.B.I. agents was not suggested to the district judge.

7. If we were to do so, it would be necessary to apply the state law of Maryland. United States v. DiRe, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Where there is no laying on of hands, criminal arrest occurs in Maryland only when there is "an intent on the part of one to arrest * * * and * * * of such other to submit." Cornish v. State, 215 Md. 64, 68, 137 A.2d 170, 172 (1957). See also, United States v. Comi 336 F.2d 856, 858 (4th Cir 1964)

Proper fulfillment of this function requires that, constitutional limitations aside, all relevant, competent evidence be admissible, unless the manner in which it has been obtained—for example, by violating some statute or rule of procedure—compels the formulation of a rule excluding its introduction in a federal court." Lopez v. United States, 373 U.S. 427, 440, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963). We feel no such compulsion here. Martin had no right that he not be viewed. United States v. Wade, supra, 388 U.S. at 221, 87 S.Ct. at 1929, 18 L.Ed.2d at 1154. A lineup is not the only means of identifying a suspect; an individual not in custody, as Martin, "may be placed under surveillance—he may be viewed on the streets, entering or leaving his home or place of business, at places of amusement, or at any other place where he is not entitled to privacy." Rigney v. Hendrick, 355 F.2d 710, 712 (3d Cir. 1965). See also, Golliher v. United States, 362 F.2d 594 (8th Cir. 1966); Kennedy v. United States, 122 U.S.App.D.C. 291, 353 F.2d 462 (1965). Martin's identification occurred under circumstances not entirely dissimilar from a lineup. There were other persons present. He was not pointed out by the F.B.I. agents. Unlike the situation in Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966), the possibility of an objective, impartial judgment by the prosecuting witnesses was not destroyed by the zeal of investigating officers. We think the conduct of F.B.I. agents in this case was not so "manifestly improper" as to warrant the fashioning of an exclusionary rule in the exercise of our supervisory power. Lopez v. United States, supra, at 471, 83 S.Ct. 1381.

A factor that should not be ignored is what Judge Kaufman has termed the right of individuals to exculpate themselves. United States v. Bonanno, 180 F.Supp. 71, 81 (S.D.N.Y.1960). Either Martin or Quarles or both could have been exonerated by the procedures of which they now complain. Neither viewing was so inherently unfair that identification was the foregone conclusion—as is, indeed, indicated by the failure of a bank witness to make identification of Quarles.

### III.

### OTHER ASSIGNMENTS OF ERROR

■■■ We find no merit in any of the other contentions advanced by the defendants. Even if Quarles were compelled to say "Hurry" at the bank, this would not be a violation of his rights under the Fifth Amendment. United States v. Wade, supra, 388 U.S. at 222, 87 S.Ct. at 1930, 18 L.Ed.2d at 1155; Schmerber v. State of California, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Further, the issue of identity was adequately presented to the jury by closing arguments and by the instructions of the trial judge, and no exception to the charge was taken. We find no basis on which to predicate plain error in regard to the failure of the trial judge to give a cautionary instruction on identity on his own motion. Jones v. United States, 124 U.S.App.D.C. 83, 361 F.2d 537 (1966); Madison v. United States, 125 U.S.App.D.C. 26, 365 F.2d 959 (1966); Jones v. United States, 113 U.S.App.D.C. 233, 307 F.2d 190 (1962); Fed.R.Crim.P. 30. And the orderly administration of justice precludes a remand to await the outcome of pending cases on jury selection.[8] Consequently, the district court is

Affirmed.

---

**8.** Quarles and Martin have requested that we remand this case to await the outcome of pending cases that challenge the method of selecting juries in the District of Maryland. However, the challenges rely heavily on Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966), which was decided before the trial of Quarles and Martin. The district judge allowed counsel for Quarles two weeks time to consider filing a motion attacking the jury selection process. No such motion was ever filed. Since counsel were aware of Rabinowitz, we think there was knowing waiver. See also Fed.R.Crim.P. 6(b) and 12(b).