**STATE of Missouri, Respondent,**

v.

**Harold JACKSON, Appellant.**

**No. 55996.**

Supreme Court of Missouri,
Division No. 2.

Feb. 22, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

William J. Eichenser, St. Louis, for appellant.

HENRY I. EAGER, Special Commissioner.

Defendant was convicted by a jury of assault with intent to kill with malice and, upon stipulation of and a finding of a prior felony conviction, imprisonment and discharge, he was sentenced to a term of twenty years. He was ably represented at the trial by two appointed counsel. Before the jury was sworn the Court heard extensive evidence on defendant's motion to suppress his identification; this motion was denied, which action is one of the points now raised. Motion for new trial was duly filed and overruled and this appeal followed.

Chester Perkins and his wife Thelma lived in quarters at the back of his plumbing shop at 2908 Gamble in the City of St. Louis. There was a small hallway between the shop and the living quarters. At about 5:00 p. m. on January 5, 1970, Mr. Perkins closed his shop, locking the front door with a regular bolt lock and also a chain. A few minutes before 9:00 p. m. Perkins was resting on his bed in his shorts, when both he and his wife heard a noise in the shop; Mrs. Perkins went to the back door of the shop, partially opened it and looked in. She saw a man standing near the opened front door with their TV sitting in front of him; the set had obviously been moved. The man had a rifle in his hand, which she first described as a "shotgun." She later described the man as colored, brown skin, wearing a brown topcoat and dark trousers, and with no hat. The shop was well lighted with three different lights, one of which was a fluorescent light. Mrs. Perkins looked at the man for several seconds. As she looked the man said to her,—"Come here or I'll shoot." She promptly left the door and told her husband of the occurrence. He got into his slippers, picked up his revolver, went to the shop door and stuck his head in; almost immediately, there was a shot from the man whom he saw at the front of the shop; Perkins saw the "rifle" which the man had in his hands; the TV was at his feet. The man fired "somewhere around three" shots, one of which hit the top of the door where Perkins was standing (as demonstrated in a photograph and by his testimony), causing splinters to hit him on the neck; another struck the top of a dryer. Perkins promptly shot at the man "a couple of times," obviously without hitting him. He then drew back and told his wife to call the police; however, he again stuck his head around the door and the man shot at him one more time, while still standing in the doorway; the next time he looked in the man was gone. Both Mr. and Mrs. Perkins positively identified defendant as that man at the trial. Several photographs of the scene were taken by the police and identified and received in evidence. These showed the shop, the position of the TV moved to the front door, and at least two bullet marks or holes. The chain had been broken from the front door. The police recovered two bullets or parts of bullets, and three empty shell cases.

When the police call was received, Officer Stephen Landa was assigned to the investigation and Officer William Stone was assigned to "assist" on the call. Each was in uniform and was driving alone in a regular patrol car. Officer Landa arrived in

about three minutes and proceeded to interview Mr. and Mrs. Perkins, get a description of the man, and statements of the occurrence. Officer Stone had started toward 2908 Gamble from four or five blocks away when he saw a man running in a direction away from that location; the man had what "appeared to be a rifle or a shotgun butt sticking out from his coat, from below his coat." The man had on a brown coat, "dark pants," and no hat. There was ice on the streets. Stone stopped his car in the street alongside the man, got out, and told the man to stop; the man kept on running, stopped momentarily, fell, dropped a .22 caliber rifle, got up and left it on the ground, and continued running until Officer Stone caught up with him when he fell again. In the meantime the officer had picked up the rifle. Officer Stone took the man into custody, put handcuffs on him, and put him in the enclosed and locked back of his patrol car; he then proceeded to the Perkins address. He positively identified defendant at the trial as the man he thus took into custody and identified the rifle as the one he recovered from defendant; and also defendant's coat.

Officer Stone, as stated, proceeded to 2908 Gamble to complete his "assist" assignment and did assist in the continuing investigation there. While at the scene, Officer Stone asked Mr. Perkins if he could identify the man in his custody and a little later asked Mrs. Perkins also. This will be developed more fully.

The following evidence was produced on defendant's motion to quash the identification: that a police officer (Stone) brought a man to the front door of the Perkins' shop in handcuffs, and asked Mr. Perkins, and later Mrs. Perkins separately, to look at him. The two officers stood nearby. Both Mr. and Mrs. Perkins, separately and without discussion between them, identified the man definitely as the one who had been in the shop; he had on the same clothing. It is indicated that the officer asked these people if they could identify

the man and that at such slightly different times, each said that he or she could. Mr. Perkins told the officer that he "could positively identify him." All this happened within a few minutes after the first officer arrived. Defendant was then placed under arrest for the present offense and was taken away and booked. Stone did not take defendant to the Perkins place for identification and that developed when Officer Landa saw the rifle and asked about it, knowing that it was not a part of the police equipment.

At the trial the rifle was identified by three different witnesses. Mrs. Perkins remembered the "funny looking wood on it"; Officer Stone identified it. Mr. Perkins was definite that it was the one defendant was holding and shooting at him with. Three shell casings were picked up at the scene, and it was shown by expert testimony that they were fired in that rifle. It was a .22 caliber pump rifle. There was also evidence in the trial before the jury of the foregoing identification of defendant in front of the shop by Mr. and Mrs. Perkins, and that during this confrontation defendant cursed Mr. Perkins, abused him generally and finally lunged at him, whereupon Mr. Perkins hit him in the mouth with his fist.

The only evidence offered by defendant was that of a barber, Jacob Stalworth, who testified that defendant had worked for him for three months prior to his arrest and that he left the shop at about 8:00 p. m. on the day of his arrest and had no rifle.

 Defendant's first point is that of supposed error in overruling "Defendant's Motion to Suppress Evidence Because of the Unlawful and Illegal Arrest of the Defendant," without probable cause. The only reference in the transcript to any such motion is as follows: "Oral Motion to Suppress Evidence. Thereafter, and on April 10, 1970, defendant's oral motion to suppress evidence was argued and submitted and denied." A motion to suppress

evidence must be made and the evidence thereon presented before the commencement of trial, with one exception not applicable here. Rule 33.03(a)5, V.A.M.R. And the burden is, of course, on the appellant to bring up a transcript of the proceedings including the evidence to show error; otherwise we presume that the action of the trial court was correct. State v. Smith, Mo., 298 S.W.2d 354. Counsel is apparently arguing here that the admission of the rifle in evidence was improper because there was no probable cause for the arrest, and has cited cases to the effect that an arrest may not be made on suspicion. No objection was made to the offer of the exhibit at the trial and defendant asks that we consider the point as plain error. We hold that there is not a sufficient record for its consideration, but we certainly do not mean to imply that, under these circumstances, there was no probable cause for the initial arrest. See: State v. Jefferson, Mo., 391 S.W.2d 885; State v. Smith, Mo., 298 S.W.2d 354; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Kennedy v. United States, 122 U.S. App.D.C. 291, 353 F.2d 462.

■ The next point involves the denial of defendant's motion to suppress the identification of defendant, at trial and otherwise, because of the supposed "taint" of the showing of defendant to Mr. and Mrs. Perkins, handcuffed and in the presence of the officers, within a very short time after the offense. Counsel say that this showing was so suggestive as to offend against due process, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247, and State v. Parker, Mo., 458 S.W.2d 241. We note that defendant was shown to the victims only after the rifle was seen by the first officer, and thus a connection was created between defendant and the crime. In Wade, defendant was shown in a lineup without notice to counsel already appointed; the judgment was re-versed and the case sent back for the trial court to determine whether the in-court identification had a sufficient independent source. In Stovall, the showing of the suspect to the wife of a murder victim in a hospital, she having been seriously wounded, was held to be justified under the "totality of the circumstances," although the defendant was in handcuffs and accompanied by several police officers. The Court commented that the showing of suspects singly had been condemned, but that here there was no denial of due process. In Simmons and Parker, supra, it was held that the showing of photographs and other investigative means of identification will be considered in the light of the "totality of circumstances" and will only be held to taint the in-court identification if they are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." In both cases the in-court identification was upheld, there being an ample independent basis in each case for the in-court identification. The cited cases do not require or indicate a different result here. Mr. and Mrs. Perkins had ample opportunity to observe the defendant in their shop under good lighting and they were able to describe him rather accurately to the first officer who arrived. The identifications were made in a matter of minutes after the offense was committed. There was an ample independent source for the identification at the trial. See generally: State v. Balle, Mo., 442 S.W.2d 35; State v. Sweazea, Mo., 460 S.W.2d 614; Kennedy v. United States, 122 U.S.App.D. C. 291, 353 F.2d 462 (Judge, now Chief Justice Burger). There could be no legally sufficient "taint" from the showing of defendant.

■ Moreover, the courts have held that the prompt showing of a suspect to the victims of a crime is a proper procedure, justified by the exigencies of the situation; such action may immediately indicate to the officers whether the suspect should be released or held, and whether they should proceed along other lines; frequently time

is of the essence in such matters. See State v. Hamblin, Mo., 448 S.W.2d 603; State v. Bevineau, Mo., 460 S.W.2d 683; Kennedy, supra. In Hamblin, the Court held that the showing of a suspect to the victim in a hospital within half an hour of the robbery was not only "sound police procedure" but was "dictated by common sense"; and the Court further held that Wade, supra, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, did not dictate otherwise. See also State v. Williams, Mo., 448 S.W.2d 865. Counsel complains that defendant had not been arrested for the present crime when he was exhibited to Mr. and Mrs. Perkins. We cannot see that this makes any legal difference whatever, and no authority is cited. He was in police custody, presumably lawful, when a direct connection, namely the rifle, linked him directly with the assault. He was there, and it was not only "sound police procedure" but "common sense" to see if the victims could identify him. In that way the police would immediately know whether to hold him on the assault charge, or release him (on that) and pursue their investigation. The Court did not err in denying the motion to suppress the identification.

■ In the course of Mr. Perkins' testimony he volunteered that "he meant to. kill me, that's for sure." This statement followed a recital of "what happened" when he looked in the door. Upon objection and motion the Court ordered the statement stricken and told the jury to disregard it. The motion for a mistrial was denied. Counsel now insist that a mistrial should have been granted because the statement was a conclusion on the ultimate issue which the jury had to decide. The statement was a conclusion and improper, but the trial court was vested with a wide discretion in the determination of its effect and of the necessity for a discharge of the jury. State v. Camper, Mo., 391 S.W.2d 926; State v. Nolan, Mo., 423 S.W.2d 815; State v. Harrington, Mo., 435 S.W.2d 318. That discretion was not abused and the

point is denied. We note also that the conclusion was one which was obvious if the testimony of Perkins on the facts was believed.

■ Defendant complains of Instruction No. 2, which counsel has not set out in his brief. The part complained of is as follows: "Second, that he did so with malice aforethought—that is, intentionally and without just cause or excuse and after thinking about it beforehand for any length of time, however short, and * * *" Specifically it is said that the term "for any length of time, however short," was an undue emphasis on that part of the evidence since the "length of time" was a question solely for the jury from all the evidence, and also that it was argumentative, citing State v. Chinn, 153 Mo.App. 611, 133 S.W. 1196. That case merely states general principles and is inapplicable here. Defendant did not assign this complaint as an error in his motion for new trial, saying merely that the law was not fully explained in the instruction and that more detail should have been given. We might thus totally disregard the point but, as a matter of fact, the phrase has been used and approved so long that it has become a "classic" statement in criminal instructions. State v. Finnell, Mo., 280 S.W.2d 110; State v. Ayers, Mo., 305 S.W.2d 484. There was ample evidence of malice here. Ayers, supra; State v. Hatfield, Mo., 465 S.W.2d 468. The point is denied.

■ It is next contended that the Court erred in refusing to give instructions on lesser degrees of assault, i. e., certain forms of assault without malice, and common assault. A request was made orally as follows: "MR. MOORE: We would suggest to the Court that an instruction of assault with intent to kill without malice and assault to kill, to do great bodily harm, with and without malice, and common assault." No such instructions were tendered, but we may assume that if the evidence fairly presented those issues, such

instructions would be a part of the law of the case. State v. Norris, Mo., 365 S.W.2d 501. Defendant cites State v. Fine, 324 Mo. 194, 23 S.W.2d 7. There defendant ran the complainant off of his (defendant's) farm with a loaded rifle, but fired no shots and testified that he did not intend to shoot him. The Court held that on that evidence instructions on assault without malice and common assault should have been given. It noted and distinguished cases where shots had been fired or actual attempts had been made to seriously injure or kill a victim. That case is distinguishable on its facts and from the Court's own statements. Here several shots were fired at Perkins over a period of time, with a lapse in between, and a verbal threat was made to Mrs. Perkins. The evidence here was such that defendant was either guilty of an assault with malice or he was not guilty at all. There was no evidence to support a submission of lesser degrees of assault. State v. Norris, Mo., 365 S.W.2d 501. There the Court said, loc. cit. 504: " 'The law presumes malice as a concomitant of an assault with a deadly weapon in the absence * * * of countervailing testimony or circumstances.' " Defendant offered no evidence on this subject. See also: State v. White, Mo., 440 S.W.2d 457; State v. Burns, Mo., 328 S.W.2d 711. These cases fully justify the action of the trial court. The point is denied.

A point is made that in the closing argument of the State, the prosecutor stated that people say that the courts are "too easy on these guys." Counsel objected and the Court sustained the objection. No further relief was asked. The remark seems to have been within the scope of permissible argument concerning the prevalence of crime and the necessity of strict law enforcement. State v. Elbert, Mo., 438 S.W.2d 164, and cases cited; State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, cert. denied, Laster v. State, 352 U.S. 936, 77 S.Ct.

237, 1 L.Ed.2d 167. Defendant's cited case of State v. Groves, Mo., 295 S.W.2d 169, is inapplicable. Defendant got all the relief he asked, in any event, and the point is of no substance.

Finally, points are made that defendant's oral motions for acquittal at the close of the State's case and at the close of all the evidence should have been sustained. The evidence recited here and our holdings on the other points demonstrate the invalidity of these contentions. Counsel seem in this to rely upon the contentions that the "Motion to Suppress Evidence" and the motion to suppress the identification should have been sustained, and the supposedly prejudicial remark made by Mr. Perkins. We have ruled against defendant on all of these points and nothing further need be said. Defendant was not entitled to an acquittal by the Court for any reason.

The last assignment that the verdict is "contrary to the law and the weight of the evidence" is wholly insufficient for consideration under our rules. Rule 83.05(e), V.A.M.R.; Stanziale v. Musick, Mo., 370 S.W.2d 261; De Voto v. Fez Construction Co., Mo.App., 271 S.W.2d 199. In fact, such an assignment is not sufficient to preserve any point in a criminal motion for new trial. Rule 27.20; State v. Stapleton, Mo., 368 S.W.2d 395; State v. Ronimous, Mo., 319 S.W.2d 565. It it is equally insufficient as a point on appeal.

We find no prejudicial error and the judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.